[Cite as *State v. Warren*, 2011-Ohio-4633.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95671**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## EDDIE WARREN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**AFFIRMED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-533587

**BEFORE:** Jones, J., Stewart, P.J., and Cooney, J.

RELEASED AND JOURNALIZED:    September 15, 2011

ATTORNEY FOR APPELLANT

Matthew M. Nee
The Law Offices of Matthew M. Nee
1956 West 25th Street, Suite 302
Cleveland, Ohio 44113


ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor

BY: James M. Rice
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, J.:

{¶ 1}  Defendant-appellant, Eddie Warren ("Warren"), appeals his convictions for aggravated robbery and felonious assault.    Finding no merit to the appeal, we affirm.

{¶ 2}  In 2010, Warren was charged with two counts of aggravated robbery with one-, three-, and five-year firearm specifications; one count of aggravated robbery with one- and

three-year firearm specifications; two counts of kidnapping with one- and three-year firearm specifications; and one count of felonious assault with one-, three-, and five-year firearm specifications. Warren waived his right to a jury trial and the matter proceeded to a trial before the bench. The following evidence was presented at trial.

{¶ 3} On January 24, 2010, Joseph Woods, Charmaine Williams, and Lynn Evcic went to Club Alchemy in the Flats area of downtown Cleveland. As they were parking, Woods observed Warren, whom he did not know, standing on the corner. Warren approached Woods's car and asked if Woods had any marijuana. Woods said "no," and as he walked away, he heard Warren say to him, "lay it down, give me your pockets." Woods turned around and saw Warren holding a gun. Woods put his hands in the air. Woods testified that he knew he was going to be robbed and described the gun as a silver revolver. Warren told Woods to "put his hands down so the police don't see." Woods reached into his pocket to get his money and Warren told him that he would get the money. Warren took $40 out of Woods's pocket and told him to "walk off." As Woods walked away, he heard Warren tell Williams "let me get that" and saw Warren take Williams's purse off her arm. Warren then got into a black car driven by a "girl in a white shirt," later identified as Brittani Jennings.[1]

---

[1]Jennings pled guilty to obstructing justice and theft and received two years of community control sanctions for her participation in the robbery. See *State v. Jennings*, Cuyahoga Common Pleas Case No. CR-533587.

**{¶ 4}** Woods got into his car and pursued Warren. While still in the Flats, Warren leaned out of the passenger side window and shot twice at Woods. Woods ducked and, in the process, rear-ended the black car. Woods, still driving, called 911 and told the dispatcher that he had been robbed and shot at and was following the car with Warren in it. Woods chased Warren through Cleveland for approximately 15 minutes, with speeds in excess of 80 m.p.h.

**{¶ 5}** Woods testified that he told the police he saw Warren throw Williams's purse out of the car in the area of East 39th Street and Superior Avenue. Woods continued to pursue the black car with Warren in it, and the black car drove to the Fifth District police station. The police placed Woods and Warren into the back seat of police cars for questioning.

**{¶ 6}** Woods later met with the police and picked Warren's photo from a photo array. The state played the 911 tape of the call Woods made to police. Woods talked to the dispatcher as he followed the black car, trying to get the license plate number. Woods told the dispatcher that "he shot at me twice," that he was following a woman and man in a black car with the female driving. Woods updated the dispatcher with his location as he followed Warren. The dispatcher told Woods to stop following the car and Woods stated that he would not because the man had his fiancée's purse. Woods stated he was "doing 80" down East 55th Street. Woods told the dispatcher he could not see the black car's license plate

number because the plate was knocked off when Woods rear-ended the car.

{¶ 7} Evcic testified that she was walking into the bar with Woods and Williams when Warren approached Woods. She kept walking and when she looked back, she saw Warren holding a small gun with a silver handle. She continued walking, called 911 on her cell phone, and handed the phone to Williams. Evcic saw Woods take off after Warren. She and Williams waited for police to arrive. The police took the women to the police station where they both identified Warren as their assailant and Williams was given her purse.

{¶ 8} Williams testified that while pulling into the parking lot of the bar, she noticed a woman sitting in a car. She saw Warren approach Woods and say "lay it down." She testified that Warren had a gun and described it as small, silver, with a three- or four-inch barrel. She testified that Warren took $40 out of Woods's pocket and then told her "baby girl, give me that, let me get that," and pointed at her purse. She held out her arm and he took her purse and told her to walk away and not look back. She walked to the corner, looked back, and saw the same car with the woman in it leave the parking lot. The car passed her and she saw Warren leaning back in the passenger seat. The car had temporary tags on it. The state entered into evidence Williams's call to 911. Williams told the dispatcher that a man robbed her and her boyfriend with a silver gun, took her purse, and took off in a black car with gray seats, driven by a female and with 30-day temporary tags.

{¶ 9} Williams testified that the police recovered her purse, but her credit cards and

some make-up were missing.

{¶ 10} Cleveland Police Officers Roland Brown and Sean Gorman testified that they observed a bullet hole and bullet skid mark on Woods's car. Officer Brown testified that he recovered $40 from Warren after he was arrested and the police recovered Williams's purse in the area of East 39th Street and Superior Avenue.

{¶ 11} Warren also testified. He stated that he had just gotten out of prison and was at Club Alchemy with friends to celebrate his birthday. He testified he left the bar around 2:30 a.m. and his girlfriend was waiting in the parking lot to pick him up. Warren testified that he and Woods acknowledged each other but he denied robbing Woods or carrying a gun. He stated that his girlfriend was driving him home when Woods came up on her car and rear-ended it. Warren testified that his girlfriend kept driving and Woods rear-ended them three more times, so he had his girlfriend drive to the police station.

{¶ 12} The trial court convicted Warren of the aggravated robbery and felonious assault charges along with all accompanying firearm specifications but acquitted him of the kidnapping charges. The trial court subsequently sentenced Warren to 16 years in prison.

{¶ 13} Warren now appeals, raising the following three assignments of error for our review:

{¶ 14} "I. The trial court erred by convicting Mr. Warren based on insufficient evidence.

{¶ 15} "II. The trial court erred by convicting Mr. Warren contrary to the manifest

weight of the evidence.

{¶ 16} "III.    Mr. Warren's trial counsel rendered ineffective assistance."

Sufficiency of the Evidence

{¶ 17} In his first assignment of error, Warren challenges his convictions on sufficiency of the evidence grounds.

{¶ 18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 19} A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 20} R.C. 2903.11, which governs the crime of felonious assault, states in pertinent part:

{¶ 21} "(A) No person shall knowingly do either of the following:

{¶ 22} " * * *

{¶ 23} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 24} R.C. 2911.01, Ohio's aggravated robbery statute, provides in pertinent part that:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 25} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *"

" * * *

"(3) Inflict, or attempt to inflict, serious physical harm on another."

{¶ 26} Warren claims that the state failed to provide sufficient evidence that he had a gun because no gun was ever found, no forensic testing was completed to determine if the hole and mark on Woods's car were caused by a gun, the police did not perform a gunshot residue test on Warren to determine if he had recently fired a gun, and the police failed to do any forensic testing on Jennings's car.

{¶ 27} A review of the record shows that the state provided sufficient evidence to support Warren's convictions. Woods, Williams, and Evcic all testified that they saw Warren point a gun at Woods and they described the gun as small and silver. Woods testified that Warren leaned out of Jennings's car and shot at him twice. Williams testified that she observed a bullet hole near the window on the driver's side door of Woods's car and saw

further damage to the car that looked like "a bullet glancing off the car." Williams also testified that Warren pointed his gun at her when demanding her purse.

{¶ 28} Officer Brown testified that he had been trained as a police officer and a military policeman and had observed vehicles damaged by different calibers of weapons, as well as personally having fired at vehicles as part of his training and observed the damage caused by various weapons. He explained that he observed one complete bullet hole in the hood of Woods's car and a bullet skid mark that he believed were consistent with a vehicle that had been struck by gunfire. Officer Gorman also testified to the damage found on Woods's car.

{¶ 29} Based on the evidence presented at trial, we find that the state presented sufficient evidence that Warren committed aggravated robbery and felonious assault. Although no forensic testing was completed by the police department, the witness's testimony was sufficient to establish the elements of the crimes of which Warren was convicted. The victims testified that Warren had a small silver gun, used the gun to rob Woods and Williams, and then shot from inside a car at Woods. The police testified as to their observations of the damage to Woods's car, recovered Williams's purse in the area Woods told police he saw Warren throw it, and found the $40 allegedly stolen on Warren.

{¶ 30} In light of the above, the first assignment of error is overruled.

Manifest Weight of the Evidence

{¶ 31} For his second assigned error, Warren contends that his conviction was against the manifest weight of the evidence.

{¶ 32} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, a reviewing court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial is reserved for only those "exceptional cases in which the evidence weighs heavily against the conviction." Id.

{¶ 33} Warren argues that the evidence weighed heavily against his conviction because no gun was found, no forensic evidence was presented linking him to the crime, he was the one who led Woods to the police station, and the victims were all either convicted felons or lived together.

{¶ 34} Upon review, this was not an exceptional case in which the evidence weighs heavily against the conviction. Although we consider the credibility of witnesses in a manifest weight exercise, issues of witness credibility and the weight to attach to specific

testimony still remain primarily within the province of the trier of fact, whose opportunity to make those assessments is superior to that of the reviewing court. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. On this record, the trial court did not "clearly [lose] its way and create[ ] such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *Martin* at 175.

{¶ 35} Although Warren argues that he must be the victim in this case because it was he who led Woods to the police station after Woods rammed his girlfriend's car, the trial court found that Warren, after disposing of the purse and the gun, may have believed that he had a chance of convincing the police that Woods was the perpetrator and he was the victim. The trial court as the trier of fact in this case had the opportunity to hear from the victims and the defendant. It was up to the trial court to determine witness credibility and we will not usurp the court's role.

{¶ 36} Therefore, the second assignment of error is overruled.

Ineffective Assistance of Trial Counsel

{¶ 37} In the third assignment of error, Warren argues that his counsel was ineffective for failing to call witnesses that could have bolstered his testimony that he did not have a gun or rob anyone.

{¶ 38} In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test enunciated in *Strickland v. Washington* (1984), 466 U.S. 668,

104 S.Ct. 2052, 80 L.Ed.2d 674; see, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. Initially, the defendant must show that counsel's performance was deficient. To meet that requirement, the defendant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. The defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland* at 690.

{¶ 39} Next, if the defendant successfully proves that counsel's assistance was ineffective, the second prong of the *Strickland* test requires the defendant to prove prejudice in order to prevail. Id. at 692. To meet that prong, the defendant must show that counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. A defendant meets this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

{¶ 40} Warren argues that his counsel should have called additional witnesses that could have bolstered his claims; specifically the bar's bouncer, the two friends Warren left the

bar with, and his co-defendant.   But the decision whether to call witnesses is generally a matter of trial strategy and, absent a showing of prejudice, does not deprive a defendant of the effective assistance of counsel. *State v. Lopez*, Cuyahoga App. No. 94312, 2011-Ohio-182, appeal not allowed by 128 Ohio St.3d 1501, 2011-Ohio-2420, 947 N.E.2d 683; *State v. Utz*, Crawford App. No. 3-03-38, 2004-Ohio-2357, ¶12.    Warren is unable to show that he was prejudiced by his counsel's decision not to call additional witnesses.

{¶ 41} Therefore, the third assignment of error is overruled.

{¶ 42} Accordingly, judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES,   JUDGE

MELODY J. STEWART, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR